**Opinion filed August 5, 2021**



**In The**

# Eleventh Court of Appeals

_____

## No. 11-20-00101-CV

_____

**CLAYTON MOUNTAIN DEVELOPMENT, LLC AND MICHAEL RUFF IN HIS CAPACITY AS TRUSTEE OF THE MAR LIVING TRUST, Appellants**

**V.**

**SUZANN RUFF, Appellee**

**On Appeal from the 29th District Court**

**Palo Pinto County, Texas**

**Trial Court Cause No. C46164-2**

**M E M O R A N D U M   O P I N I O N**

After an arbitration panel awarded Appellee Suzann Ruff $49,000,000 in actual damages on her tort claims against her son, Michael Ruff,[1] Suzann asserted claims in this suit against Appellant Clayton Mountain Development, LLC (CMD), among other defendants, based on CMD's alleged participation in

_____

[1]Because several individuals involved in this litigation have the same surname, we will refer to those individuals by first name for purposes of clarity.

Michael's conduct. Subsequently, in her sixth amended petition, Suzann sought (1) to recover actual damages of over $15,000,000 on her claims for "knowing participation and breach of fiduciary duty and conspiracy;" (2) punitive damages on her claims for conspiracy, fraud, breach of fiduciary duties, and intentionally wrongful conduct; and (3) enforcement of the constructive trust imposed in an arbitration award on Michael's interest in certain entities and property. Suzann also requested that any defendant that had marketed and sold tracts of land from her property be required to account for its participation in the marketing and sale of the property and the disposition of funds received from the sales.

Based on CMD's failure to comply with discovery orders, the trial court struck CMD's answer and rendered default judgment against CMD. The trial court ordered that Suzann was the sole owner of CMD and that (1) a deed between CMD and Appellant MAR Living Trust (MAR); (2) a deed between MAR and Clayton Mountain Partners, LLC (CMP), which is not involved in this ligation; and (3) a Memorandum of Assignment of Developer's Rights between MAR and CMP were void. The trial court then severed Suzann's claims against CMD into a separate lawsuit. After we abated this appeal, the trial court signed an amended judgment in the severed cause of action in which it clarified that the judgment against CMD was final.

In six issues, CMD contends (1) that the assigned judge did not have authority to sign the amended final judgment; (2) that the amended final judgment is interlocutory; and (3) that the trial court erred when it granted the motion to sever, struck CMD's answer, granted relief that "amounts to unliquidated damages" without hearing evidence, and granted judgment against MAR. We hold that the assigned judge had authority to sign the amended judgment and that the amended judgment is final. After considering the merits of CMD's remaining issues, we (1) affirm the trial court's sanctions order in which it struck CMD's answer,

2

(2) reverse the amended judgment and the trial court's order in which it severed Suzann's claims against CMD, and (3) remand this case to the trial court for further proceedings.

*Background*

In 2011, Suzann sued Michael in probate court in Dallas County. On February 19, 2014, the probate court granted Michael's motion to compel arbitration and stayed the litigation in the probate court. While the arbitration was pending, Suzann filed this case in Palo Pinto County on October 21, 2014, against CMD; Destination Development Partners, Inc. (DDP); Destination Development Community III, Ltd., f/k/a Icarus Investments IV, Ltd. (DDC); CM Resort LLC; and CM Resort Management LLC (collectively the Original Defendants). Suzann alleged that, based on her contribution of real property located in Palo Pinto County to a development project, she was a limited partner, joint venturer, or investor in the project and did not received any distribution of assets when the project was liquidated. Suzann asserted claims for breach of fiduciary duty, conspiracy, and conversion. Suzann also requested an accounting and the imposition of a constructive trust (1) on all proceeds, funds, or property in the possession of the Original Defendants that was obtained as a result of DDP's and DDC's breaches of fiduciary duty or as a result of a conspiracy between DDP, CMD, CM Resort, and CM Resort Management to breach DDP's fiduciary duties to Suzann; (2) on all future proceeds obtained or received from the sale or transfer of any of the real property in Palo Pinto County; and (3) on all land that was part of the real property that Suzann contributed to the project that had not been purchased for value by bona fide purchasers.

On December 7, 2017, the arbitration panel issued a decision in which it found that Michael committed numerous torts against Suzann and awarded Suzann actual damages of $49,000,000 plus interest, attorney's fees, and expenses. In

Suzann's favor, the arbitration panel also imposed a constructive trust (1) on any real property belonging to or originating from property belonging to Suzann and held or owned, in whole or in part, by Michael, in any capacity, "relating in any way to the so-called Palo Pinto County, Texas, properties" and (2) on Michael's interests, of whatever nature, in any entity that he formed or in which he invested using funds or property misappropriated from, and originating with, Suzann. The arbitration panel listed specific entities and properties in which Michael's interest was subject to the constructive trust, including "4,683 acre real property asset located in Palo Pinto County, Texas." CMD was not one of the listed entities. The probate court subsequently confirmed the arbitration award (the Probate Judgment), and Michael unsuccessfully appealed the Probate Judgment to the Dallas Court of Appeals. *See Ruff v. Ruff*, No. 05-18-00326-CV, 2020 WL 4592794, at *15 (Tex. App.—Dallas Aug. 11, 2020, pet. denied) (mem. op.).

On December 27, 2017, Suzann filed a first amended petition in this litigation in which she named additional defendants, including Michael, and amended her claims against the Original Defendants. Suzann's amended claims were based on the constructive trust imposed by the arbitration award, Michael's alleged misappropriation and hiding of her assets, and the other defendants' alleged participation in Michael's conduct. Suzann served the Original Defendants with her first requests for production of documents on December 27, 2017. On December 28, 2017, Suzann served the Original Defendants with her second requests for production of documents, noticed the depositions of Michael and of the corporate representative of DDP, and filed a motion for expedited discovery. Suzann filed an amended motion for expedited discovery on January 4, 2018.

In the amended motion, Suzann expressed concern that Michael would hide or divest assets before the Dallas County probate court confirmed the arbitration award. Suzann argued that Michael had "consistently" refused to provide an

4

accounting to Suzann or to produce documents or answer questions about the location of her assets. Suzann requested that the trial court order Michael to produce documents within four days after the trial court considered the motion and that she be allowed to depose Michael, a corporate representative of DDP, and Joel Taylor no later than January 18, 2018.

On January 11, 2018, the trial court granted the motion, in part, and ordered the Original Defendants to produce to Suzann "any and all materials responsive" to the two requests for production no later than 5:00 p.m. on January 15, 2018 (the January 11 discovery order). The trial court also ordered Michael to appear for deposition on January 18, 2018, and the corporate representative of DDP to appear for deposition on January 19, 2018.

On January 22, 2018, Suzann filed an amended motion to compel and a motion to prohibit the movement of assets. Suzann complained that, rather than complying with the January 11 discovery order, the Original Defendants produced records that were not in compliance with the order, filed a motion to reconsider, and asserted "various objections." Suzann also complained that Michael failed to answer a number of questions during the depositions.

Suzann requested that the trial court (1) hold Michael in contempt for failing to produce documents in compliance with the January 11 discovery order and for his behavior during the depositions, (2) order Michael and his counsel to pay all costs and attorneys' fees associated with those depositions, (3) order Michael to reappear for deposition both as an individual and as the corporate representative of DDP, (4) direct the Palo Pinto County Sheriff's Department to seize all records and computers from the 7-R Ranch offices and obtain the passwords to those computers so that Suzann could examine them, (5) overrule the objections to Suzann's requests for production, (6) order the Original Defendants to produce all documents responsive to the requests for production, and (7) prohibit "any of the Defendants in

5

this case" from moving assets absent further order of the trial court. Suzann attached to the amended motion to compel a sanctions order issued against Michael in the arbitration; excerpts from three preliminary hearings in the arbitration; an order from the Dallas County probate court that prohibited Michael from moving assets; the arbitration award; and the transcripts of Michael's depositions, individually and as the corporate representative of DDP.

On January 30, 2018, the trial court granted, in part, Suzann's amended motion to compel (the January 30 discovery order). The trial court found that Michael and DDP failed to comply with the January 11 discovery order and ordered Michael to reappear for deposition, both individually and as the corporate representative of DDP, no later than February 9, 2018, and to pay the court reporter's charges for the first depositions. The trial court also overruled the Original Defendants' objections to Suzann's first and second requests for production and ordered the Original Defendants to produce to Suzann "no later than February 5, 2018, all documents responsive to [Suzann's] First and Second Requests for Production, including, bank account statements, complete federal tax returns and schedules, company agreements, partnership agreements, company books and records reflecting capitalization, dividends and distributions and/or compensation to owners, officers, directors and/or managers." Finally, the trial court prohibited "all Defendants"[2] "from moving or transferring any assets in Palo Pinto County under their control absent advance Order of this Court."

On March 1, 2018, Suzann filed a motion to compel, motion for sanctions, and motion to admonish against Michael and the Original Defendants. Suzann argued that Michael made the decisions for all the Original Defendants and that,

[2]In addition to the Original Defendants, the named defendants on January 30, 2018, were 7R Owners Associations, Inc.; Specfac Group LLC; Sundance Lodge LLC; Sundance Partners LLC; Sundance Residence Club LLC; Sundance Residents LLC; and Michael.

6

while the Original Defendants had produced a "few documents," they had not produced "what they were ordered to produce." Suzann also contended that Michael had refused to answer questions at the second set of depositions.

Suzann asserted that the Original Defendants did not produce any documents on February 5, 2018; rather, they produced documents that were "partially responsive to only one of the requests" on February 7, 2018, and a "few more incomplete records" on February 8, 2018. Suzann complained that the purpose of the February 5 deadline for production of documents was to provide counsel with an opportunity to review the documents prior to Michael's depositions on February 8. Suzann argued that the Original Defendants thwarted this purpose when they produced documents at 7:00 p.m. on the night before the depositions and produced additional documents while the depositions were taking place.

Suzann argued that Michael and the Original Defendants had ignored two court orders and had produced documents in bad faith and that further orders compelling discovery would not be sufficient. Suzann requested that Michael's and the Original Defendants' affirmative defenses be struck and that it be "deemed established" (1) that the Original Defendants, the Original Defendants' assets, and the Original Defendants' assets that had been transferred "to other entities in any way connected to Michael" were subject to the constructive trust imposed by the arbitration award and confirmed in the Probate Judgment and (2) that the Original Defendants "were formed for the purpose of, and are continuing to participate in" Michael's breaches of fiduciary duty as judicially established in the arbitration award. Suzann also requested that the Original Defendants be ordered to comply "within minutes" with the trial court's previous discovery orders, be required to complete authorizations that would allow Suzann to obtain tax returns and transcripts from the Internal Revenue Service (the IRS) as well as bank records, and be required to sign directives to attorneys and accountants that authorized the release

7

of their files to Suzann. Suzann attached to the motion a list of "Things Mike Doesn't Know or Remember"; the errata sheets from the January 19, 2018 depositions; and Michael's February 8, 2019 depositions, individually and as DDP's corporate representative.

The Original Defendants, along with other defendants, filed (1) an answer to Suzann's first amended petition in which they asserted a number of affirmative defenses and (2) counterclaims against Suzann. As relevant here, the Original Defendants alleged in their counterclaims (1) that, because Michael did not own any interest in the defendants, the constructive trust in the arbitration award did not apply to them and (2) that the Probate Judgment lacked sufficient specificity to identify any particular tract of land and failed as a matter of law. Any of the Original Defendants "which own real property located in Palo Pinto County" that was subject to a lis pendens filed by Suzann also sought to quiet title against Suzann's adverse claims.

The trial court heard Suzann's motion to compel on June 14, 2018. Suzann did not offer any evidence at the hearing. After hearing argument, the trial court indicated that it was going to grant the motion to compel, but that the question was "what relief [was] granted" because it had to be "as specific and narrow as possible." Suzann's counsel indicated that he would prepare a proposed order that allowed the trial court to "check yes or no to various things."

At a hearing on August 14, 2018,[3] the trial court indicated that it would sign the proposed order on Suzann's motion to compel with one modification. Before the trial court signed the order, CM Resort filed a notice of bankruptcy, and the case was removed to bankruptcy court. Subsequently, nine more defendants filed for

---

[3]A transcript of this hearing is not in the appellate record.

bankruptcy. The bankruptcy court severed Suzann's claims against the non-debtor defendants and remanded those claims to the trial court.

On April 17, 2019, the trial court granted Suzann's motion to compel (the April 17 discovery order). The trial court ordered the Original Defendants to produce within ten days all responsive documents in their possession, custody, or control, including documents in the control of banks, accountants, and lawyers who had provided services for Michael or the Original Defendants. The trial court also ordered the Original Defendants to, within five days, (1) sign authorizations for Suzann to obtain bank records, (2) prepare a letter to Kim Roberts and to any other attorney who might have responsive records authorizing the release to Suzann of all documents in their possession related to the Original Defendants, (3) prepare a letter to Peter Cantrell and to any other accountant used by the Original Defendants authorizing the release to Suzann of the Original Defendants' tax returns and related documents, and (4) sign authorizations for Suzann to obtain all available tax information from the IRS.

As to sanctions, the trial court noted that, although it did not base the sanctions on conduct in other proceedings, it could, and should, consider such conduct when it determined the severity of the sanctions. The trial court specifically referenced Michael's conduct in the arbitration proceedings and in the Dallas County probate court. The trial court also found that the Original Defendants had failed to make reasonable inquiry as to whether responsive documents were in their possession, custody, or control; had attempted to deceive the court and other parties as to what documents were produced and were within their possession, custody, and control; and had engaged in conduct "marked by delay, avoidance and obstruction of process."

The trial court determined (1) that the discovery abuse committed by Michael and the Original Defendants went "directly to the heart of [Suzann's] allegations and

9

directly to the defenses, both affirmative and factual, being asserted by" Michael and the Original Defendants and (2) that, because the requested discovery was directed toward the relationship between Michael and the Original Defendants, Michael's control over the Original Defendants, and the location of Suzann's assets and the proceeds of the sale of those assets, "case determinative sanctions . . . would be directly directed toward the discovery abuse" and would remedy the prejudice to Suzann. The trial court struck Michael's and CMD's affirmative defenses and found that lesser sanctions would not be effective because (1) Michael had been previously sanctioned, (2) two motions to compel had been granted against the Original Defendants, (3) preventing or limiting discovery by Michael and the Original Defendants would not be a deterrent and would not remedy the prejudice to Suzann, and (4) awarding attorneys' fees would not remedy the prejudice or address the actual abuse.

On July 18, 2019, Suzann filed a motion for judgment against CMD followed by an amended motion for judgment on August 5, 2019. In the amended motion, Suzann asserted that neither Michael nor CMD had complied with the trial court's discovery orders. Suzann specifically complained that CMD had not produced any documents within ten days of the April 17 discovery order, had not signed the authorizations required by the order, and had failed to produce responsive documents in its possession that related to the transfer of real property. Suzann attached to the amended motion for judgment (1) an October 9, 2017 Special Warranty Deed pursuant to which CMD transferred certain real property in Palo Pinto County to MAR, (2) a February 12, 2018 Special Warranty Deed pursuant to which MAR transferred the same property to CMP, and (3) a Memorandum of Assignment of Developer's Rights from MAR to CMP on February 12, 2018. All three documents were filed in the Palo Pinto County deed records on May 16, 2019.

10

Suzann requested that the trial court render judgment in her favor against CMD; order that she was the sole member of CMD; order that all property, real and personal, in the name of CMD belonged to her; and order that the two deeds and the memorandum of assignment were null and void. CMD responded that the trial court did not have discretion to award the relief requested by Suzann, that it was not one of the entities that was listed in the arbitration award as being subject to the constructive trust, that Suzann's requested relief did not comply with the Probate Judgment and failed as a discovery sanction, and that it was entitled to a jury trial on the requested relief. CMD and MAR also objected to the entry of judgment on grounds (1) that the trial court had not heard any evidence at the hearing on Suzann's motion for judgment, (2) that the trial court had failed to properly apply the test to determine whether death penalty sanctions were appropriate, and (3) that CMD was entitled to a jury trial on Suzann's requested relief.

The trial court granted Suzann's amended motion for judgment against CMD on September 29, 2019 (the September 29 discovery order). The trial court noted that, although it had ordered in the April 17 discovery order that any further violations of the discovery orders or any further discovery abuse by CMD could result in further sanctions, CMD had continued to engage in discovery abuse and had failed to comply with the April 17 discovery order. The trial court specifically found that, after the April 17 discovery order, CMD did not produce additional documents, did not provide any authorizations, and did not send the required letters. The trial court also found that, in her first request for production, Suzann requested documents that were related to all transactions involving CMD, that CMD had produced publicly available deed records, and that CMD had affirmatively represented that all transaction documents had been produced. The trial court specifically found that the October 17 and February 2018 deeds and the memorandum of assignment were responsive to the requests for production, that

11

CMD had been ordered to produce those documents three times, and that CMD had not produced responsive documents even after its affirmative defenses were struck.

The trial court found that CMD's refusal to produce the documents that it was ordered to produce, to sign the required authorizations, or to send the required letters satisfied Suzann's burden of proof *ipso facto* and that, based on the allegations in the case and the past discovery abuses discussed in the April 17 discovery order, "it [was] clear that the Defendants have or should have much (if not all) of the documents relevant to" Suzann's burden. The trial court determined that, based on CMD's repeated refusal to produce the documents and repeated violation of court orders, "the presumption arises that [CMD's] positions in this case are without merit."

The trial court struck CMD's answer and rendered judgment against CMD. In its judgment, the trial court ordered (1) that Suzann was the sole member of CMD and was immediately entitled to all rights and assets as the sole member, (2) that the warranty deed between CMD and MAR and the warranty deed between MAR and CMP were null and void, and (3) that the memorandum of assignment between MAR and CMP was null and void.

In her sixth amended petition, which was the live petition at the time of the judgment against CMD, Suzann asserted claims against twenty-four business entities, including CMD; the trustees of two trusts; and two individuals, Michael and his brother, Mark Ruff. Suzann did not assert any specific factual allegations as to the conduct of CMD or any of the other entity defendants. Rather, as to CMD and the other entity defendants, Suzann collectively requested the enforcement of the constructive trust imposed by the arbitration award and an accounting and asserted claims for breach of fiduciary duty, knowing participation and breach of fiduciary duty, conspiracy, and fraud. Suzann sought actual damages of over $15,000,000 on her claims for knowing participation and breach of fiduciary duty and conspiracy as

well as punitive damages based on the "Defendants' conspiracy, fraud, breach of fiduciary duties, and intentionally wrongful conduct." The September 29 judgment did not resolve Suzann's tort claims against CMD, did not award Suzann any damages, and did not contain a Mother Hubbard clause or any other language that indicated that the trial court intended to resolve all of Suzann's claims against CMD.

Suzann filed a seventh amended petition on October 17, 2019. CMD was named as a defendant in the seventh amended petition. Suzann nonsuited her fraud claim, but continued to assert causes of action for constructive trust, breach of fiduciary duty, knowing participation and breach of fiduciary duty, and conspiracy against CMD and the other entity defendants collectively. Although Suzann did not add any additional factual allegations about any conduct by CMD or any other entity defendant that allegedly injured her, she clarified that the claim for breach of fiduciary duty was premised on a determination that a defendant was Michael's alter ego while the conspiracy claim was premised on there not being a determination that a defendant was Michael's alter ego. Suzann also requested that, if any entity defendant was determined to be Michael's alter ego, it be required to account for its participation in the marketing and sale of Suzann's property and the disposition of any funds from those sales.

On November 11, 2019, Suzann filed a motion to sever the judgment against CMD. Pursuant to the Texas Citizen's Participation Act, CMD, along with other defendants, filed a motion to dismiss the claims in the seventh amended petition on December 16, 2019. On January 7, 2020, the trial court severed all of Suzann's claims against CMD into cause number C46164-2. Both CMD and MAR appealed the September 29 judgment in cause number C46164-2.

On April 30, 2020, we issued an order in which we held that the September 29 judgment, in conjunction with the severance order, was not a final, appealable order. We abated this appeal to allow the trial court to clarify its intent with regard to

13

finality and to allow the parties to obtain orders that disposed of the claims between the parties. On May 5, 2020, the trial court signed an amended judgment in cause number C46164-2 that clarified that all of Suzann's claims against CMD that were not granted were denied, that Suzann's claims against all other defendants remained pending in cause number C46164, that the amended judgment disposed of all claims in the severed action, and that the amended judgment was final and appealable.[4]

*Jurisdiction*

In their first and third issues, Appellants contend that this court does not have jurisdiction over this appeal because (1) the September 29 judgment was interlocutory and the assigned judge did not have authority under the order of assignment to sign the May 5 amended judgment and (2) the amended judgment fails to dispose of all claims between all parties. These complaints are questions of law that we review de novo. *See Shetewy v. Mediation Inst. of N. Tex., LLC*, 624 S.W.3d 285, 287 (Tex. App.—Fort Worth 2021, no pet.) (holding that whether a judgment is final is a legal question subject to de novo review); *Icon Benefit Adm'rs II, L.P. v. Mullin*, 405 S.W.3d 257, 264 (Tex. App.—Dallas 2013, orig. proceeding [mand. denied]) (holding that an appellate court construes an order that can be given a certain or definite legal meaning as a matter of law).

The presiding judge of an administrative region is authorized to assign judges in the region to "try cases and dispose of accumulated business." TEX. GOV'T CODE ANN. § 74.056(a) (West 2013). Visiting judges generally are assigned either to a

---

[4]In cause number C46164, the trial court heard CMD's motion to dismiss by submission and, on June 4, 2020, signed an order in which it denied the motion. Because the trial court continued to consider and rule on CMD's motion to dismiss in cause number C46164 after it had severed Suzann's claims against CMD into cause number C46164-2, this court is confronted with the unusual situation in which CMD has appealed the denial of its motion to dismiss in both the original and the severed causes while simultaneously appealing from the judgment against it in the severed cause. For the sake of judicial efficiency, we have addressed the trial court's denial of CMD's motion to dismiss in conjunction with the denial of other defendants' motions to dismiss in our opinion issued today in Cause No. 11-20-00114-CV; *Clayton Mountain Development, LLC v. Ruff.*

14

particular case or for a specific period of time. *Hull v. S. Coast Catamarans, L.P.*, 365 S.W.3d 35, 41 (Tex. App.—Houston [1st Dist.] 2011, pet. denied). The scope of the visiting judge's authority and when that authority terminates is controlled by the assignment order. *Ex parte Eastland*, 811 S.W.2d 571, 572 (Tex. 1991) (orig. proceeding) (per curiam); *Hull*, 365 S.W.3d at 41. Because an assigned judge's authority is based on the terms of the assignment, any act that exceeds the scope of the assignment is void. *Eastland*, 811 S.W.2d at 572; *In re Richardson*, 252 S.W.3d 822, 826 (Tex. App.—Texarkana 2008, orig. proceeding).

The Honorable Michael Moore, presiding judge of the 29th District Court, recused himself from the case in January 2019. On January 22, 2019, the Honorable David Evans, presiding judge of the Eighth Administrative Judicial Region, assigned the Honorable Judge Robert Brotherton, Senior District Judge of the 30th District Court:

> [T]o preside in Cause Number C46164, styled Suzann Ruff v. Destination Development Partners, Inc., et al. from this date until the undersigned Presiding Judge has terminated this assignment in writing. In addition, whenever the assigned judge is present in the county of assignment for a hearing in this cause, the judge is also assigned and empowered to hear at that time any other matters that are presented for hearing in other cases.

Appellants argue that, because Judge Brotherton was assigned to hear only the original cause and was not in Palo Pinto County on May 5, 2020, for a hearing in cause number C46164, he did not have authority to act in cause number C46164-2 and the amended judgment is void.

We must read the assignment order "as a whole in the context in which it was issued and not permit form to prevail over substance." *In re C.H.C.*, 396 S.W.3d 33, 42 (Tex. App.—Dallas 2013, no pet.). Judge Brotherton was assigned to hear all of Suzann's claims in cause number C46164 and rendered judgment against CMD in cause number C46164. The subsequent severance of the judgment against CMD into

15

cause number C46164-2 did not deprive Judge Brotherton of the authority to clarify the original judgment.[5]  *See Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 206 (Tex. 2001) ("If the appellate court is uncertain about the intent of the order, it can abate the appeal to permit clarification by the trial court." (citing TEX. R. APP. P. 27.2)).

Appellants also assert that the amended judgment is not final because it does not dispose of all claims and issues as to MAR and CMD.  Unless a statute expressly authorizes an interlocutory appeal, we generally have jurisdiction only over final judgments.  *CMH Homes v. Perez*, 340 S.W.3d 444, 447 (Tex. 2011).  When there has not been a conventional trial on the merits, a judgment is not final for purposes of appeal unless it either (1) "actually disposes of every pending claim and party" or (2) "clearly and unequivocally states that it finally disposes of all claims and all parties." *Lehmann*, 39 S.W.3d at 205.  To be a final order, there must be some "clear indication that the trial court intended the order to completely dispose of the entire case." *Id.* at 205.

In the amended judgment, the trial court expressly ordered that all of Suzann's claims against CMD that were not specifically granted were denied and that the amended judgment "disposes of all claims in this severed action and is final and appealable."  Therefore, the amended judgment "clearly and unequivocally" states that it is intended as a final judgment as to CMD.  *See Bella Palma, LLC v. Young*, 601 S.W.3d 799, 801 (Tex. 2020) (per curiam) ("Although no 'magic language' is required, a trial court may express its intent to render a final judgment by describing its action as (1) final, (2) a disposition of all claims and parties, and (3) appealable.").

---

[5]Appellants rely on *Starnes v. Chapman*, 793 S.W.2d 104, 107 (Tex. App.—Dallas 1990, orig. proceeding), for the proposition that, because a severed cause of action is an independent action capable of being tried and reduced to final judgment, a new order of assignment was necessary before Judge Brotherton could preside over C46164-2.  However, in this case, Suzann's claims against CMD had been reduced to judgment in the original action, and in the amended judgment Judge Brotherton simply clarified his intent that the judgment against CMD is final.  We express no opinion on whether Judge Brotherton would have authority to preside over a severed cause of action in which Suzann's claims against a defendant had not been reduced to judgment in the original action.

As to MAR, it is not a party in the severed action, and Suzann's claims against MAR and MAR's counterclaims against Suzann remain pending in the original action. Although, as discussed below, the trial court granted Suzann more relief in the severed action than she was entitled to receive, that error did not affect the finality of the amended judgment. *See Lehmann*, 39 S.W.3d at 200 ("A judgment that grants more relief than a party is entitled to is subject to reversal, but it is not, for that reason alone, interlocutory.").

We hold that the assigned judge had authority to sign the amended judgment and that the amended judgment is final. Therefore, we have jurisdiction over this appeal. We overrule Appellants' first and third issues.

*Analysis*

In their second and fourth through sixth issues, Appellants assert that the trial court erred when it (1) granted Suzann's motion to sever, (2) struck CMD's answer, (3) granted judgment without hearing evidence on "what amounts to unliquidated damages," and (4) granted judgment against MAR.

We review these complaints under an abuse of discretion standard. *Longview Energy Co. v. Huff Energy Fund LP*, 533 S.W.3d 866, 874 (Tex. 2017) (applying abuse-of-discretion standard to trial court's imposition of a constructive trust); *F.F.P. Operating Partners, L.P. v. Duenez*, 237 S.W.3d 680, 693 (Tex. 2007) (applying abuse-of-discretion standard to trial court's severance of a claim); *Cire v. Cummings*, 134 S.W.3d 835, 838 (Tex. 2004) (applying abuse-of-discretion standard to trial court's ruling on a motion for sanctions). A trial court abuses its discretion when its decision is arbitrary or unreasonable, or when it acts without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985).

*A. Severance*

In their second issue, Appellants argue that the trial court erred when it granted Suzann's motion to sever because the severed claims against CMD are interwoven with the claims in cause number C46164 so as to involve the same facts and issues and the severance was granted only so that the parties could start the appellate process.

Rule 41 of the Texas Rules of Civil Procedure allows for any claim against a party to be "severed and proceeded with separately." TEX. R. CIV. P. 41; *see also Duenez*, 237 S.W.3d at 693. The controlling reasons to grant a severance are to avoid prejudice, do justice, and increase convenience. *Duenez*, 237 S.W.3d at 693. A claim is properly severed when (1) the controversy involves more than one cause of action, (2) the severed claim would be the proper subject of an independent lawsuit, and (3) the severed claim is not so interwoven with the remaining claims that they involve the same facts and issues. *State v. Morello*, 547 S.W.3d 881, 889 (Tex. 2018); *see also State Dep't of Highways & Pub. Transp. v. Cotner*, 845 S.W.2d 818, 819 (Tex. 1993) (per curiam) (holding that the trial court erred in severing claim where third criterion was not met).

In both the sixth amended petition, which was the live pleading at the time of the September 29 judgment against CMD, and the seventh amended petition, which was the live pleading when the trial court granted Suzann's motion to sever, Suzann did not make specific factual allegations as to any conduct by CMD, or any of the other entity defendants, that she alleged caused her harm. Rather, Suzann asserted the same causes of action against these defendants collectively and, based on the same facts, alleged that these defendants collectively participated in a scheme or conspiracy with Michael to hide Suzann's assets.

Suzann argues in her brief that the claims against each of the entity defendants are not inextricably interwoven because the claims differ "based on what property

that entity defendant holds for [Michael], and what role that defendant played in [Michael's] scheme." However, Suzann made no such factual distinctions in her pleadings. Further, because the facts and issues were so interwoven between all the entity defendants, the trial court (1) adjudicated in the default judgment against CMD some of Suzann's claims against MAR, a defendant in the original action, without adjudicating MAR's counterclaims and without considering MAR's affirmative defenses; (2) granted default judgment against CMD on Suzann's claims while leaving CMD's counterclaims pending in the original action; and (3) considered and denied CMD's motion to dismiss in the original action after severing Suzann's claims against CMD.

Because, as pleaded, Suzann's claims against all the entity defendants are so interwoven as to involve the same facts and issues, the trial court abused its discretion when it granted the motion to sever. *See Cotner*, 845 S.W.2d at 819 (holding that the trial court improperly severed the claims of one plaintiff against a defendant when the facts and issues related to liability were the same for both plaintiffs and, to some extent, the extent of the plaintiffs' alleged damages were related); *In re Glast, Phillips & Murray, P.C.*, No. 05-20-00557-CV, 2020 WL 6696371, at *4 (Tex. App.—Dallas Nov. 12, 2020, orig. proceeding) (mem. op.) (holding that trial court improperly severed a fraudulent transfer claim against one defendant where the plaintiff alleged that "all defendants were involved in the same scheme to fraudulently transfer assets to avoid paying for the legal services at issue"). We sustain Appellants' second issue.

*B. Sanctions*

In their fourth issue, Appellants assert that the trial court abused its discretion when it imposed death penalty sanctions against CMD. When we review a trial court's imposition of sanctions, we are not bound by the trial court's findings of fact or conclusions of law. *Am. Flood Research, Inc. v. Jones*, 192 S.W.3d 581, 583

(Tex. 2006) (per curiam). Rather, we review the entire record independently to determine whether the trial court abused its discretion. *Id.*

Rule 215 of the Texas Rules of Civil Procedure authorizes the trial court to impose appropriate sanctions upon persons who abuse the discovery process.[6] TEX. R. CIV. P. 215.1(d), 215.2(b). If a party fails to comply with proper discovery requests, fails to obey discovery orders, or otherwise abuses the discovery process, the trial court may strike the party's pleading or render a judgment by default after notice and hearing. TEX. R. CIV. P. 215.2(b)(5), 215.3; *Cire*, 134 S.W.3d at 839. However, the trial court may not impose sanctions that are more severe than necessary to satisfy legitimate purposes, which include assuring compliance with discovery, deterring other litigants who might be tempted to abuse discovery, and punishing parties who have violated the discovery rules. *Cire*, 134 S.W.3d at 839; *Bodnow Corp. v. City of Hondo*, 721 S.W.2d 839, 840 (Tex. 1986) (per curiam).

A death penalty or case-determinative sanction is any sanction that causes a claim or defense to be adjudicated based on the manner in which a party or its attorney conducted discovery rather than on the merits. *Braden v. Downey*, 811 S.W.2d 922, 929 (Tex. 1991) (orig. proceeding); *see also Altesse Healthcare Sols., Inc. v. Wilson*, 540 S.W.3d 570, 572 (Tex. 2018) (per curiam) (A death penalty sanction is one "under which the offending party essentially loses the case because of the sanction[.]"). Death penalty sanctions should be the exception rather than the rule, and a "trial by sanctions" should be avoided whenever possible. *TransAmerican Nat. Gas Corp. v. Powell*, 811 S.W.2d 913, 918–19 (Tex. 1991)

---

[6]We recognize that, because neither the trial court's order nor Suzann's amended motion for judgment referred to a specific rule or tracked the language of a particular rule, our analysis is not governed by Rule 215 alone. *See Am. Flood Res.*, 192 S.W.3d at 583. However, under the circumstances presented in this case, the legal standards applicable to a review of sanctions imposed pursuant to a specific discovery rule are also applicable to sanctions imposed under the trial court's inherent authority. *Altesse Healthcare Sols.*, 540 S.W.3d at 574–75; *see also Brewer v. Lennox Hearth Prods., LLC*, 601 S.W.3d 704, 718 (Tex. 2020).

(original proceeding); *see also Altesse Healthcare Sols.*, 540 S.W.3d at 575. Specifically, "[s]anctions which are so severe as to preclude presentation of the merits of the case should not be assessed absent a party's flagrant bad faith or counsel's callous disregard" for the discovery rules. *TransAmerican*, 811 S.W.2d at 918.

Discovery sanctions, including death penalty sanctions, must be just. TEX. R. CIV. P. 215.2(b); *TransAmerican*, 811 S.W.2d at 917. For the imposition of sanctions to be just, (1) there must be a direct relationship between the offensive conduct, the offender, and the sanction imposed and (2) the sanctions must not be excessive. *TransAmerican*, 811 S.W.2d at 917. In *TransAmerican*, which, like the present case, involved the imposition of a case-determinative sanction, the supreme court noted:

> Discovery sanctions cannot be used to adjudicate the merits of a party's claims or defenses unless a party's hindrance of the discovery process justifies a presumption that its claims or defenses lack merit. However, if a party refuses to produce material evidence despite the imposition of lesser sanctions, the court may presume that an asserted claim or defense lacks merit and dispose of it.

*Id.* at 918 (citations omitted).

Appellants argue that that the trial court did not adhere to the first prong of the *TransAmerican* test because there was no evidence that the failure to comply with the April 17 discovery order was "the fault of the lawyers only, CMD only, or both." *See TransAmerican*, 811 S.W.2d at 917 (holding that a trial court "must at least attempt to determine whether the offensive conduct was attributable to counsel only, to the party only, or to both"). "A just sanction must be directed against the abuse and toward remedying the prejudice caused to the innocent party, and the sanction should be visited upon the offender." *Spohn Hosp. v. Mayer*, 104 S.W.3d 878, 882 (Tex. 2003) (per curiam). Although a party should not be punished for its

counsel's conduct in which the party is not implicated, it also "must bear some responsibility for its counsel's discovery abuses when it is or should be aware of counsel's conduct and the violation of the discovery rules." *TransAmerican*, 811 S.W.2d at 917.

In the April 17 discovery order, the trial court required CMD to produce documents and to sign documents that would allow Suzann to obtain documents directly from the IRS, CMD's banks, and CMD's attorneys and accountants. The trial court found in the September 29 discovery order that, after the April 17 discovery order, CMD did not produce documents, did not sign the ordered authorizations, and did not send letters to its attorneys and accountants; that CMD had affirmatively represented that all "transaction documents had been produced"; that the two deeds and the memorandum of assignment were responsive to Suzann's requests for production; and that CMD failed to produce responsive documents even after its affirmative defenses were struck. We hold that there was sufficient evidence to establish that CMD engaged in the discovery abuse found by the trial court or should have been aware of its counsel's failure to comply with the trial court's discovery orders.

Further, there was a direct relationship between the sanction imposed and the offensive conduct. Suzann produced evidence in support of the January 22, 2018 amended motion to compel that CMD owned property in Palo Pinto County, sold lots in Palo Pinto County, had a bank account, and received the proceeds from the sale of the lots. The trial court found in the September 29 discovery order that the bank records produced by CMD, "on their face, show that other responsive documents exist that were not produced." The trial court also found in the April 17 discovery order, which was incorporated into the September 29 discovery order, that CMD attempted to deceive the trial court as to what documents had been produced and what documents were in CMD's possession, custody, and control.

The trial court determined that discovery relating to Michael's relationship with the Original Defendants, Michael's control over the Original Defendants, and the location of the assets taken from Suzann and of the proceeds of the sale of those assets, went "directly to the heart" of Suzann's allegation and directly to the Original Defendants' defenses. Therefore, the trial court's striking of CMD's answer based on its refusal to produce information crucial to Suzann's claims was directed against CMD's offensive conduct and toward remedying the prejudice caused to Suzann by CMD's failure to comply with its discovery obligations.

Appellants also contend that the sanctions do not comply with the second prong of the *TransAmerican* test because lesser sanctions would have resulted in full compliance with CMD's discovery obligations. Generally, before death penalty sanctions are justified, the trial court must test lesser sanctions to determine their efficacy. *Id.*; *see also Cire*, 134 S.W.3d at 840. In all but the most exceptional cases, the trial court must actually impose the lesser sanctions before it strikes a party's pleadings. *Cire*, 134 S.W.3d at 840. In all cases, the record must reflect that the trial court considered the availability of appropriate lesser sanctions and must contain an explanation of the appropriateness of the sanction imposed. *Id.*

In its September 29 discovery order, the trial court noted that, when it struck CMD's affirmative defenses on April 17, 2019, it specifically ordered that any further discovery abuse by CMD could result in further sanctions. The trial court found that, despite this warning, CMD continued to engage in discovery abuse and failed to comply with the April 17 discovery order. The trial court determined that lesser sanctions had not worked; that CMD failed to produce responsive documents even after its affirmative defenses had been struck; and that, based on CMD's conduct, "the presumption arises that [CMD's] positions in this case are without merit." *See TransAmerican*, 811 S.W.2d at 918 ("[I]f a party refuses to produce material evidence, despite the imposition of lesser sanctions, the court may presume

that an asserted claim or defense lacks merit and dispose of it."). Therefore, the striking of CMD's answer was not more severe than necessary to satisfy the legitimate purposes of the sanction.

On this record, the trial court did not abuse its discretion when it struck CMD's answer. We overrule Appellants' fourth issue.

## C. Judgment

In their fifth and sixth issues, Appellants assert that the trial court erred when it granted judgment because Suzann (1) failed to give fair notice to CMD of any claims against it; (2) was required to present evidence that established that she was entitled to the requested relief; and (3) could have obtained judgment against MAR, who was not subject to the sanctions order, only by summary judgment or by trial. Suzann responds that she was not required to submit evidence that established that she was entitled to the relief granted because, based on the default judgment, CMD factually admitted that it was subject to the constructive trust imposed in the Probate Judgment, that it was formed with funds misappropriated from Suzann, and that any transfer by CMD was fraudulent.

Although the trial court did not specifically state on which cause of action it granted judgment for Suzann, the relief granted by the trial court in the amended judgment could only be based on Suzann's pleaded cause of action for the enforcement of the constructive trust imposed in the arbitration award. The trial court specifically denied judgment on all of Suzann's remaining claims. Therefore, the trial court did not grant judgment against CMD on Suzann's causes of action for breach of fiduciary duty, knowing participation and breach of fiduciary duty, conspiracy, and fraud or on Suzann's request for an accounting. Therefore, we need not address CMD's arguments that, in the sixth amended petition, Suzann failed to give fair notice of her claims against CMD. *See* TEX. R. APP. P. 47.1.

24

"A constructive trust is an equitable, court-created remedy designed to prevent unjust enrichment." *KCM Fin. LLC v. Bradshaw*, 457 S.W.3d 70, 87 (Tex. 2015). A constructive trust serves "the very broad function of redressing wrong or unjust enrichment in keeping with basic principles of equity and justice." *Meadows v. Bierschwale*, 516 S.W.2d 125, 131 (Tex. 1974). Generally, the imposition of a constructive trust requires that a party establish: (1) a breach of a special trust or fiduciary relationship or fraud; (2) unjust enrichment of the wrongdoer; and (3) an identifiable res that can be traced back to the original property. *KCM Fin.*, 457 S.W.3d at 87. A constructive trust may be imposed on the wrongfully-taken property or the proceeds or revenues generated from the property. *Id.* at 88; *CDM Constructors, Inc. v. City of Weslaco*, No. 13-19-00447-CV, 2021 WL 1133615, at *9 (Tex. App.—Corpus Christi–Edinburg Mar. 25, 2021, pet. denied) (mem. op.).

A default judgment, like all judgments, must conform to the pleadings. TEX. R. CIV. P. 301; *Mullen v. Roberts*, 423 S.W.2d 576, 579 (Tex. 1968). In the no-answer default judgment context, the failure to file an answer operates as an admission of the material facts alleged in the petition except as to unliquidated damages. *Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 83 (Tex. 1992); *see also Paradigm Oil, Inc. v. Retamco Operating, Inc.*, 372 S.W.3d 177, 186 (Tex. 2012) (noting that striking a defendant's answer as discovery sanctions establishes the existence of pleaded liability facts). If the facts set out in the petition allege a cause of action, a default judgment establishes the defendant's liability. *Morgan v. Compugraphic Corp.*, 675 S.W.2d 729, 731–32 (Tex. 1984). However, if a defendant is not liable as a matter of law based on the facts alleged in the petition, then liability cannot be created by the failure to file an answer. *Calderoni v. Vasquez*, No. 03-11-00537-CV, 2012 WL 2509802, at *2 (Tex. App.—Austin June 26, 2012, no pet.) (mem. op.); *Morales v. Dalworth Oil Co.*, 698 S.W.2d 772, 775 (Tex. App.—Fort Worth 1985, writ ref'd n.r.e.). An appellate court may

25

examine the plaintiff's petition to determine whether she sufficiently pleaded a cause of action that supports the judgment. *Quality Hardwoods, Inc. v. Midwest Hardwood Corp.*, No. 2-05-311-CV, 2007 WL 1879797, at *3 (Tex. App.—Fort Worth June 28, 2007, no pet.) (mem. op.); *see also Stoner v. Thompson*, 578 S.W.2d 679, 684–85 (Tex. 1979).

This case is in an unusual posture because, rather than seeking a constructive trust based on CMD's liability on the tort claims asserted in the sixth amended petition, Suzann sought to enforce the constructive trust that was imposed in the arbitration award. Pursuant to the arbitration award, a constructive trust was imposed in Suzann's favor (1) on any real property belonging to, or originating from property belonging to, Suzann and held or owned, in whole or in part, by Michael, in any capacity, "relating in any way to the so-called Palo Pinto County, Texas, properties" and (2) on Michael's interests, of whatever nature, in any entity that he formed or in which he invested using funds or property misappropriated from, and originating with, Suzann. The issue, therefore, is whether Suzann pleaded sufficient material facts in the sixth amended petition that established that either the entire ownership interest in CMD or the real property transferred by CMD to MAR and then by MAR to CMP is an "identifiable res" that is subject to that constructive trust. *See KCM Fin.*, 457 S.W.3d at 87; *see also Jurgens v. Martin*, No. 11-18-00316-CV, 2021 WL 1033306, at *21 (Tex. App.—Eastland Mar. 18, 2021, [mand. denied]) (holding that, based on a default judgment entered after death penalty sanctions were imposed, the appellant was deemed to have admitted all factual allegations in the appellee's pleading that established liability in support of the appellee's request for the imposition of a constructive trust).

In the constructive trust cause of action in the sixth amended petition, Suzann pleaded that pursuant to the arbitration award, a constructive trust in her favor was imposed "on all of the interests that [Michael] has, or had and purportedly and/or

fraudulently transferred, in any of the" entity defendants and on Michael's interest, in any capacity, in any entity related to the development and marketing of Suzann's "Palo Pinto Ranch property" that was acquired, or in which an investment was made, with funds obtained in whole or in part from Suzann. Suzann requested that the trial court (1) order Michael to sign over his interest in the entity defendants and in any other entity that was shown to be subject to the constructive trust, (2) order that the fraudulent transfer of "any interest" was void, and (3) alternatively, order the entities to amend their formation documents "to reflect [Suzann's] ownership of any interest that [Michael] may have in the entity." In her prayer for relief, Suzann requested that the trial court enforce the constructive trust imposed in the arbitration award as to all of the entity defendants and as to other entities "as described above" and as to "the real property in Palo Pinto County."

Suzann made no factual allegations in the sixth amended petition that Michael owned, or had ever owned and fraudulently transferred, any legal interest in CMD. Further, the arbitration award did not list CMD as one of the entities in which Michael held an interest that was subject to the constructive trust. Therefore, the default judgment against CMD did not establish the material facts that Michael held, or had ever held, any legal interest in CMD that would be subject to the constructive trust imposed by the arbitration award.

In the sixth amended petition, Suzann made extensive factual allegations about Michael's conduct that she alleged caused her injury and asserted that the entity defendants were Michael's alter egos. She specifically alleged that each of the entity defendants was a sham entity; that Michael made all the decisions as to the management of the entities; and that the entities were being used as a "mere tool" by Michael to perpetuate fraud, evade fiduciary duties to Suzann, and hide or launder the assets that he misappropriated from her. Suzann alleged that the entities shared the same offices with Michael; shared the same employees, to the extent that there

27

were any employees; were created at Michael's request; were represented by the same attorneys who represented Michael in probate court; and used the same accountant (who was also Michael's accountant and the registered agent for some of the entities). Suzann asserted that "[t]hese facts show that [Michael] has acted as the real owner or beneficial owner of the entity defendants; but by virtue of the constructive trust, [Suzann] is or should be deemed the equitable owner of such entities."

Alter ego is not an independent cause of action. *Dodd v. Savino*, 426 S.W.3d 275, 291 (Tex. App.—Houston [14th Dist.] 2014, no pet.). Rather, it is a means of imposing liability for an underlying cause of action. *Id.* Based on the default judgment, CMD admitted the factual allegations in Suzann's sixth amended petition that it shared offices with Michael, shared employees with the other entities, was created at Michael's request, was represented by the same attorneys as Michael, and used the same accountant as Michael. However, whether those facts support an imposition of alter ego liability on CMD for purposes of the enforcement of the constructive trust imposed in the arbitration award was a question of law for the trial court. *See Phillips v. Carlton Energy Grp., LLC*, 475 S.W.3d 265, 286 (Tex. 2015). In the amended judgment, the trial court did not impose alter ego liability on CMD and denied all relief that was not specifically granted. Therefore, the enforcement of the constructive trust on the entire ownership interest of CMD cannot be supported on the basis that CMD is Michael's alter ego.

It is critical to our appellate review that the relief granted to Suzann by the trial court conform with the pleadings. It does not. In the constructive trust cause of action in the sixth amended petition, Suzann requested only that the trial court enforce the constructive trust imposed in the arbitration award on Michael's interest in certain entities and on certain real property in which Michael held an interest. However, the trial court imposed the constructive trust on one hundred percent of

28

the ownership of CMD, even though Suzann did not plead any material allegations of fact that support a determination that Michael is, or has been, the sole owner of CMD such that the entire ownership interest in CMD was subject to the constructive trust. *See Capitol Brick, Inc. v. Fleming Manu. Co.*, 722 S.W.2d 399, 401 (Tex. 1986) (holding that it was "impermissible in a default judgment to render judgment for damages in excess of the damages specifically pleaded"). We hold that the trial court abused its discretion when it ordered that Suzann was the sole member of CMD.

The trial court also ordered that the deed between CMD and MAR, the deed between MAR and CMP, and the memorandum of assignment between MAR and CMP were void. This relief could have been granted based only on Suzann's request in her constructive trust cause of action that the trial court order that the fraudulent transfer of "any interest" was void or based on Suzann's allegation in her fraud cause of action that Michael, in conspiracy with the other defendants fraudulently conveyed property in Palo Pinto County in an attempt to hid, conceal, and tortiously interfere with Suzann's rights and interests.

In the sixth amended petition, Suzann alleged that, at the time of her husband's death, she owned, among other assets, "the approximately 4,000 acres in Palo Pinto County at issue herein," and that Michael obtained her signature on a deed to the property. Suzann did not allege that she conveyed the property to Michael.

The arbitration award imposed a constructive trust on "any real property belonging to or originating from property belonging to [Suzann], in all her capacities, and held or owned, in whole or in part, by [Michael], in any capacity, relating in any way to the so-called Palo Pinto County, Texas, properties." Specifically, listed in the arbitration award is "4,683 acres real property asset located in Palo Pinto County, Texas" as well as three smaller parcels of land in Palo Pinto

29

County.[7] Suzann did not allege in the sixth amended petition, nor is there any independent proof admitted by the trial court, that Michael held or owned, in whole or in part, in any capacity, any interest in the "so-called Palo Pinto County, Texas, properties" or in the property that was transferred by CMD to MAR and by MAR to CMP. Therefore, Suzann did not allege any material facts, nor is there evidence in the record, that based on the default judgment against CMD, would support the enforcement of the constructive trust imposed in the arbitration award on the property transferred from CMD to MAR and from MAR to CMP.

Suzann also requested in her cause of action for the enforcement of the constructive trust imposed by the arbitration award that the trial court order that "any interest" that was fraudulently conveyed was void. In her fraud cause of action, Suzann alleged that Michael, "in conspiracy with and through other Defendants, fraudulently purported to convey (1) the property in Palo Pinto County" and (2) his interests in the entity defendants and that these conveyances were "sham transactions by and to sham entities that were [Michael's] alter egos." However, as discussed above, the trial court did not determine in the amended judgment that alter ego liability should be imposed on CMD based on the material facts alleged in the sixth amended petition. Further, it has not been determined in the arbitration award, the Probate Judgment, nor in this litigation that alter ego liability should be imposed on MAR or that MAR is a sham entity. Therefore, as pleaded by Suzann, CMD did not admit, based on the default judgment, the material fact that its transfer of property to MAR was a fraudulent transfer.

Based on the record before us, we hold that the trial court abused its discretion when it ordered, based on the default judgment rendered against CMD, that the October 9, 2017 deed between CMD and MAR, the February 12, 2018 deed between

---

[7]The arbitration award does not contain a legal or physical description of any of the properties included in the "so-called Palo Pinto County, Texas, properties."

MAR and CMP, and the Memorandum of Assignment between MAR and CMP were void. *See Chase Home Fin, LLC v. SFTF Holdings, LLC*, No. 02-10-00423-CV, 2011 WL 2756175, at *1 (Tex. App.—Fort Worth July 14, 2011, no pet.) (per curiam) (mem. op.) (holding that the trial court erred when it granted default judgment adjudicating title to real property when pleadings did not contain all essential facts to support the adjudication).[8]

We sustain Appellants' fifth and sixth issues.

*This Court's Ruling*

We affirm the trial court's September 29, 2020 order in which it struck CMD's answer. We reverse (1) the trial court's January 7, 2020 order in which it severed Suzann's claims against CMD from her claims against the other defendants and (2) the trial court's May 5, 2020 amended judgment. We remand this case to the trial court for further proceedings consistent with this opinion.


W. BRUCE WILLIAMS

JUSTICE


August 5, 2021

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.

---

[8]Suzann argues that the trial court's order that the two deeds and the memorandum of assignment are void should be affirmed because she filed a lis pendens on the property conveyed by CMD to MAR and that MAR was aware that she had asserted a claim to the property. However, because Suzann was not entitled to a default judgment that the deeds and the memorandum of assignment were void, we need not address whether the lis pendens provided sufficient notice to MAR to support the relief granted. *See* TEX. R. APP. P. 47.1.